WILLIAM J. BEAL, SR., *v.* JAMES ARNOLD, ET AL.

[Abstract Kentucky Law Reporter, Vol. 1—403.]

**Adverse Possession of Land for More Than Thirty Years Gives Title.**

Where one purchases land and goes into possession up to a certain boundary, and he and his grantees hold possession for thirty or more years, it is then too late for the heirs or grantees of the vendor to assert a claim beyond such recognized boundary line.

APPEAL FROM BULLITT CIRCUIT COURT.

. November 11, 1880.

OPINION BY JUDGE PRYOR:

The original action to enforce the lien for the purchase-money did not involve the title to the land in controversy or the boundary of the respective lands of Beal and Lansdale, and therefore cannot be regarded as a *lis pendens,* as it neither settles the question of title or boundary. That the heirs of Lansdale owed the purchase-money is conceded, but when that was paid no encumbrance existed upon any part of the tract. The only question now before the court is: Did the tract of land sold by one of the heirs of Lansdale to the appellee, Arnold, belong to the appellant, or is it embraced in the moiety sold by the ancestor of the appellant to Lansdale?

The testimony shows that Lansdale took possession of the lower end of the tract of land as early as 1825 or 1826, and that he has, or those claiming under him have, been in the actual and undisturbed possession since that time. He claimed that the boundary of his moiety extended to what is called Cedar Point Branch. This claim was notorious and evidenced by an actual possession on his part or his tenants. The ancestor of the appellant never asserted any claim beyond this line, and when selling off portions of his moiety, called to run to this Cedar Point Branch. That there was a division line established by Beal and Lansdale we think is manifest. If the land was undivided, in the sales made by Beal, Lansdale would have been a necessary party to the sales, or if not would at least have been consulted with reference to the sale of property in which he had a joint interest. This seems never to have been done, and Lansdale was permitted to remain in possession under his purchase, claiming to a certain boundary, for nearly a half of a century before his vendor, or those inheriting from him, discovered that he was in the possession of more land than he had purchased. Beal took possession of the

upper end of the tract and Lansdale the lower end, the latter actually cultivating to a certain boundary for more than thirty years, and the former recognizing that as the boundary by selling to the line claimed by Lansdale and no further, neither claiming beyond this recognized line during the whole period.

There is no doubt but that the division line was fixed by the parties, and we doubt whether Lansdale had more land in his possession than the one-half of the tract. The original agreement between Lansdale and Beal, filed in the action long since decided by this court, gives the boundary of the tract in which the two parties had an equal interest, and it is not pretended that Lansdale has more of the land than Beal or those holding from him; and if such was the case the proof is so positive as to the claim and possession of Lansdale for so many years that a division should be presumed. The fact that the land in the action to recover the purchase-money was treated as undivided will not be permitted to disturb the long and continued claim and possession, as there was nothing to call the attention of the court or litigants to any claim by appellant of land then in the actual possession of Lansdale's heirs.

The judgment below is *affirmed*.

*R. H. Field, for appellant. R. J. Meyler, for appellees.*